Thank you, Your Honor. May it please the Court, Heather Stanton for Petitioner. I'd like to reserve two minutes for rebuttal. Okay, keep your eye on the clock and we'll try to help. Okay, thank you. The evidence in the record is clear. Petitioner was not firmly resettled in Italy. In truth, Petitioner has never firmly been resettled. Not in Eritrea, where she survived female genital mutilation. Not in Ethiopia, where she escaped sexual slavery and forced abortion. And not in Italy, where she was beaten, abused, and threatened with death by a gun to her head. The initial inquiry here, and the only one that this Court need reach, is whether the government met its burden to establish firm resettlement via an offer of permanent resident status, citizenship, or some other type of permanent resettlement. It did not. The only evidence on the record of Petitioner's status in Italy is a note in a DHS report that Petitioner had some kind of Italian travel document, and Petitioner's testimony that she had temporary status, renewable every two years. The plain language of the statute requires Petitioner to have an offer of permanent status, and she did not. It was, by its very nature, temporary, not permanent, had to be renewed every two years, and renewal was not automatic. Now, how do we know renewal was not automatic? Petitioner testified that it was not. The IJ initially recognized this fact. She said, if I'm thinking of the same part of the testimony, the question was asked was there a limit on how long you could stay, and she said you can renew it every two years. Is that what you're referring to? Yes, Your Honor. Okay. So then what, I mean, the regulation, 208.15, because it's A-1-2, refers to non-permanent but indefinitely renewable legal immigration status, including asylee, refugee, or similar status. Why doesn't a refugee status that you can renew every two years fit within that definition? The court has, this court has actually already previously ruled on that issue. Specifically in Alley v. Ashcroft, the court held that an offer of temporary residence does not compel a finding of firm resettlement, and the plain language of the regulation requires an offer of permanent residence. And there the court clarified the holding in Chau v. INS that had previously held that a length of undisturbed stay only without other evidence to the contrary can allow a presumption of firm resettlement. But in Alley, the petitioner testified that he only had temporary status and the government had no evidence, such as petitioner's case here, and the court therefore found that the presumption of firm resettlement did not apply and found that there was not substantial evidence to support a finding of firm resettlement. That court, the Alley court also expressly adopted the reasoning of the Third Circuit in Abedal v. Ashcroft, and there the government presented two documents showing that the petitioner had refugee status, renewable every two years, and the court held that the documents were not substantial evidence of firm resettlement, and in fact that the records compelled the contrary conclusions that such an offer of resettlement was by its terms only temporary. Can I just stop you there? Because I'm not sure when the change was with respect to Alley, but at least at the time of the Third Circuit's decision in Abdili was from 2001, and the regulation, as quoted in the Third Circuit decision, did not include the non-permanent but indefinitely renewable. So what was that in the regulation at the time of our decision in Alley? It was in 2005, so I believe it might have been, yes. Okay, because that seems to make a difference. If all we had was the word permanent, I think you'd have a very strong argument, but I'm having trouble with the language non-permanent but indefinitely renewable, which seems to capture the status in Italy in this case. It does, but I'm sorry, Your Honor, but is that the provision specifically relating to firm resettlement? That does have very specific language in terms of the government's burden of proof. That one says specifically offer doesn't have to be guaranteed, but it does at least have to be an offer of some sort of permanent status, citizenship or otherwise, and that is the firm resettlement determination that the government failed to make a prima facie case here for. Why isn't this a prima facie case? That is to say we've got a fair amount of evidence, and she says two years, and it may or may not be indefinitely renewable. We don't know, and she may not know, but then we just move to rebuttal. A prima facie case doesn't mean the government wins, and then we've got what troubles me actually, which is to say the IJ and the BIA didn't pay any attention to the evidence about the boyfriend who is, according to her testimony, she lives with him for three years. She eventually is in fear for her life because of his abusive conduct. They talk to the police. The police are, quote, he's a friend of the police, and they go away. That strikes me as evidence that may well be fully enough to rebut. Even if she had permanent resettlement in the sense of whatever the visa documents were or were not, this now looks like she's not permanently resettled because she's being persecuted in Italy by the boyfriend with the connivance of the police. So what do we do with the fact that we just get nothing about that from either the IJ or from the BIA? That is a reversible error when the BIA fails to consider that kind of evidence that is very present on the record. That is the second prong that this court could address if it does decide the government has a prima facie case, is that regardless there is sufficient evidence on the record that both the IJ and the BIA failed to consider that petitioners, the condition of her stay in Italy was so untenable as to not have her be considered firmly resettled. So on either ground, either there wasn't a prima facie case or if there was a petitioner rebutted it, the previous decision should be reversed. And was that second ground presented to the board? It was, yes. In artfully, but petitioner did exhaust it. It does also appear that both the, she raised the issue of contesting her asylum and also she mentioned that she had suffered at the hands of people and governments. And again, there was more than sufficient evidence on the record that both should have considered when she was raising the issue, contesting her finding a firm resettlement, even though she didn't use the specific language. In artfully, but successfully raised it in front of the board and the IJ. Well, I guess, I mean, it's not just the specific language. I mean, the underlying claim of, you know, of asylum required her to show that she had been persecuted by a government. But I'm not sure why that would put the board on notice that she thought there was also a persecution in Italy. So as to defeat the firm resettlement bar, when she didn't even mention the word Italy before the board, did she? Given that this court has previously held that where the board addresses an issue it's been exhausted and she was denied asylum specifically on the grounds of firm resettlement in Italy. So by contesting that denial on those grounds, she sufficiently raised that in front of the board, which then should have considered that evidence she presented, but it failed to do so. Was she pro se during these proceedings? She was at the time of the hearing, yes. And was she pro se in front of the BIA? She was also there as well, Your Honor. Right, and so what are the rules with respect to how carefully the presentation of a claim or an argument must be made if we've got a pro se petition? They need only make clear the basis and the grounds for the challenge. This court has held that merely raising asylum, or this court has held that raising, you know, what you're contesting, you know, denial of removal, withholding of removal, asylum, that alone is sufficient when the grounds would be clear to the board of why that was denied. Okay, well, listen, we've taken you close to the end of your time. Let's hear from the government, and we will then give you a chance to respond. Thank you. May it please the court, Jennifer Corey, on behalf of the Attorney General. There is clear prima facie evidence of firm resettlement in this case, and Ms. Kahese never claimed that she couldn't stay in Italy indefinitely. That was not something that was brought up before the board explicitly at all. So that claim is unexhausted, but she now claims that her status was temporary, and therefore that it couldn't have been firm resettlement. But I think it's pretty settled that renewable does not mean that it's not permanent. There's a board case law that just came out, Matter KSE, that found that renewable and contingencies on residency do not render it insufficient to be an offer of firm resettlement. This court has a lot of unpublished cases, finding like in Romani, which was a 2002 case out of this court, that there was firm resettlement or renewed refugee status in Germany five times without difficulty was firm resettlement. Can I interrupt for just a minute? If it's unpublished, I don't pay any attention to it. Okay. It's really hard to find right-line laws on case law published on whether it seems to be a case-by-case basis. And I think in this, I think the distinction is that in Abdele, in the Third Circuit, that was a refugee status that had to be reapplied for every couple of years, and it had to be reviewed and then approved again. Whereas here, from everything that she said in her testimony, it seemed to be if you put in the proper paperwork, it would be automatically renewed. And that's the only step that had to be taken. It didn't have to be reviewed and regranted. Where do you get automatic from? I mean, she said you can renew it every two years. Well, she did it over time. I was just going to say, it wasn't clear to me in the record where there was any showing that renewal was going to be automatic. I mean, I grant that she had done it a few times, but I think what the government had to show was that at least a prima facie case, that in the future it would automatically be renewed. And what is there to show that? I think it's really her testimony never saying that she couldn't stay and her affirmative testimony saying that she had no difficulty renewing it the eight years that she was in Italy. So she had to have renewed it four times for the permit and then at least once for the passport, right, because the passport took every five years. And I think the fact that she could work and travel, there were no direct documents. The IJ allowed time for the direct documents to be procured, but those are hard to procure very often. And so then he was allowed to look at the indirect evidence. And the indirect evidence was her testimony saying that she had, that it was renewable every two and five years and that she had done it without any issue. Just out of curiosity, why is it hard to get those records? I mean, the Italian government obviously has records of who they've granted refugee status to. This seems like the sort of thing that DHS would be able to contact its counterpart agency in Italy. And why was the government not able to put in direct evidence of this? I wish I had more insight into that. I just know that case after case, this is what happens with DHS not being able to procure. And it has to do with the other governments. I think sometimes they're just not, I don't have a lot of specifics on that. I just know it happens a lot. And it's not through DHS not trying. It was shown in this case, the attorney had, I think there's even in the record that the attorney had put in the request well ahead of time and that it just never came to fruition. And it is part of the reason why we can look at indirect evidence because often we can't get direct evidence. There's so many complications in these. But you would think that quite aside from her particular documents, it would be a fairly easy matter to figure out what Italian law is in terms of categories of people, renewal and non-renewal. I mean, that would just be on the books in the law library. I can't really speak to the DHS level of how they figure out what a person's status is. I think there are several just like here. It's a pretty complicated, there are temporary statuses. There are renewable statuses here as well that are pretty obscure. And I think that it runs a whole gamut. And I don't think it's as simple as, I don't think that you can identify what a person is just based upon a testimony or that there's a document that says she had refugee status in her testimony that she had renewable refugee status. But from all inferences of indirect evidence, she could have stayed there as long as she wanted and unrestrictedly. And I think that's prima facie evidence of firm resettlement. So let's take that as prima facie evidence. I'm willing to go with you for purposes of my questions. What do we do with her testimony about the boyfriend who threatens her life, who is at least close enough to the police that when they talk, he's a friend and they go away? We don't have any mention of that, even though she's testified to it in front of the IJ. And we have, in fact, not only no mention of it, I'm just reading from the BIA. Respondent has not rebutted this evidence or shown that any exception to firm resettlement applies. There's just no mention at all. My guess is, I mean, this is no knock on the BIA. They're very busy. My guess is they didn't read the transcript, but it's right there. So it seems to me that she was pro se. She said, I do. I was not firmly resettled. It seems to me, tell me why we don't need to send this back at very minimum for the BIA to consider the evidence that she put in the record as to why she is not firmly resettled based on what might amount to persecution by the boyfriend. Well, she, in her appeal to the board, she did not say I was not firmly resettled. Her language was that she said, according to the Convention of Human Rights, persons who have suffered a great deal at the hands of others or governments will be given consideration as for asylum, in most cases, could be granted. There's no reference to firm resettlement. Well, but wait a minute. Excuse me. She may not have said resettlement, but the BIA said resettlement. So the BIA addressed the issue of resettlement. So once the BIA talks about resettlement, we know resettlement is on the table. Yes, Your Honor. And I mean, and that's what she would be appealing from the immigration judge's decision. But here it's... Resettlement is on the table in front of the BIA, and the BIA is unaware of or ignores evidence that's clearly relevant to resettlement. Well, I will say two things. One, if this is found to be an exhaustive, and I think this is the government's most important point here, if it's found to be exhaustive and that the board didn't properly address the issue of her abusive relationship and her escaping that relationship, the court needs to remand back to the board because that is something that's held within the agency's hands, and it has been repeatedly done in this court, I can name a lot of cases. Remand. Sure, sure. I got it. Of course. Yes. I will say that I think that the regulation really speaks to the restrictiveness that the government puts on your residency. And I don't believe that that is being an exception to firm resettlement, and I don't think that that was presented in this case. And I believe that the IJ and the board did not address it because this was not Italian restrictions on her residency. She never went to the police by herself. If her ex-boyfriend was a problem, she never went by herself. She left to another town and lived there safely for a month. There's evidence in the record that she never wanted to stay in Italy, and that is not what she wanted. She did not want refugee status there. She wanted to go to other parts of Europe, she said. And so I think that the, I think that it wasn't, it didn't make a plausible, it didn't rise to the level of a plausible claim of persecution. Now, what did rise to the level of a plausible claim of persecution? The boyfriend? Yes, Your Honor. Well, that it would, Italy's role or restriction in that. In what the Italy, what a private citizen was doing in a private relationship. Well, but wait a minute. We have testimony from her that when the police come, he's a friend with the police. They don't do anything and they go away. I mean, if we're just talking about an ordinary asylum case, and I'll take this just as just an asylum case, not a firm resettlement case. We have case after case after case where the person calls the police. It's almost always a woman. The police come. The boyfriend goes outside, talks to the police, gives them some money and they go away. That's plenty of evidence that the authorities are unwilling or unable. I mean, that's just we see those cases all the time. This looks like one of those. Now, I'm not in a position to rule on it because we haven't heard anything from the BIA, but it sure looks like one of those cases. Right. And in that case, if that's your position, Your Honor, it needs to be remanded. OK, OK. Well, any further questions for the government from the bench? OK, let's come back to you, Ms. Stanton. Why don't we put two minutes on the clock? The government initially the government initially misstates the burden of exhaustion as regards its duty to have a prima facie case. The fact that the board considered both the the denial of asylum and on grounds of firm resettlement and affirmed the IJ's finding that there was sufficient evidence completely puts that issue before this court. And as for the other, as Your Honor mentioned, they considered for her whether or not she was firmly resettled and they found that she had not done it, presented any evidence that she had not been, which is reversible error. The BIA is not free to ignore arguments raised by petitioner. The failure to consider evidence of contrary evidence is a reversible error, but this case should not be remanded. There is plenty of evidence before this court that petitioner status in Italy was not permanent. It was only renewable, which has again and again been found to be insufficient by this court. And the government has already had multiple bites at the apple. The IJ adjourned the hearing to get them more. But if we are going to remand for looking at the evidence with respect to the boyfriend, I think Ventura requires if we are going to say that that's reversible, I think Ventura requires remand. I don't think we're allowed to consider that evidence in this consequence in the first instance. I have a question for you. If we are to remand, I mean, I'm saying, yeah, she was pro se in front of the board, and it obviously would have been helpful to her to have a lawyer. Are you in a position or you and your firm position to represent her if it were to be remanded? Yes, we would. I would be interested in continuing my representation of petitioner. OK. Any further questions from the bench? OK, before we quit, and this is customary, the court would like to thank Miss Stanton, who's doing this pro bono. Pro bono lawyers should take these cases either on direct appeal or on petition to review are extremely helpful to the court. We are very grateful for this. And you've done a lovely job. And I compliment you on the work that you've done. And thank you. Now, I'll say everything to the government, the same thing, except the same form of thank you, because the government you're getting paid. But you've both done very nice work. And we appreciate it from both of you. Thank you. Casey versus Rosen is or welcomes and submitted for decision. Thank you.
judges: W. Fletcher, Miller, Hunsaker